UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ZACHARY SANDERS,

Plaintiff,

v.

ADAM SZUBIN, Director, Office of
Foreign Assets Control of the Untied States
Department of the Treasury, in his official
capacity; TIMOTHY GEITHNER,
Secretary, United States Department of the
Treasury, in his official capacity; and ERIC
H. HOLDER, Attorney General, United
States Department of Justice, in his official
capacity,

Defendants.

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ JUL 1 6 2009 ★

BROOKLYN OFFICE

**COMPLAINT
FOR INJUNCTIVE AND
DECLARATORY RELIEF**

# VITALIANO, J.

## PRELIMINARY STATEMENT

1.     Plaintiff Zachary Sanders brings this action to challenge Defendants' policy and practice of requiring individuals to provide potentially self-incriminating information, under threat of civil penalties, as part of their enforcement of the United States embargo against Cuba.

2.     The Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury enforces the Cuban Assets Control Regulations, 31 C.F.R. Part 515 (hereinafter the "Cuba Travel Restrictions"), under which an economic embargo exists against the nation of Cuba.  Under the terms of the Cuba Travel Restrictions, U.S. citizens and permanent residents are generally prohibited from spending money in Cuba.

3.     OFAC generally begins an investigation into possibly unlawful travel-related expenditures in Cuba after receiving information from the United States Customs Service that an individual has traveled to Cuba.  OFAC then typically sends the traveler an interrogatory

document, titled "Requirement to Furnish Information" ("RFI"), demanding information about the recipient's travel and spending in Cuba, and requiring a response within 20 business days.

4. The RFI threatens the recipient with several thousands of dollars in civil penalties merely for failure to respond within the deadline.

5. The information required by OFAC in the RFI about travel-related transactions in Cuba is potentially incriminating because the Trading with the Enemy Act, 50 U.S.C. Appx. § 16, specifically makes any willful violation of regulations promulgated under it (such as the Cuba Travel Restrictions) a criminal violation subject to criminal fines, imprisonment, or both.

6. Several other economic sanctions enforcement programs administered by OFAC (for instance, the restrictions on travel-related transactions that were part of the 1991-2004 embargo against Iraq) also utilize similar RFI forms, and the information requested in those forms also has the potential to subject the accused travelers to criminal sanctions.

7. OFAC sent Mr. Sanders an RFI regarding an alleged trip to Cuba by him. OFAC alleges that Mr. Sanders did not submit a response to the RFI.

8. Based *solely* on the failure to respond to the RFI and not on any alleged expenditures in or travel to Cuba, OFAC and the Department of Treasury imposed a $9,000 fine against Mr. Sanders.

9. If an individual fails to pay a penalty imposed under the Cuba Travel Restrictions, the matter "may be referred for administrative collection measures or to the United States Department of Justice for appropriate action to recover the penalty in a civil suit in a Federal district court," 31 C.F.R. § 515.718.

2

10. The penalty imposed against Mr. Sanders is unlawful because the Fifth Amendment prohibits the government from punishing failure to obey any regulation that requires a self-incriminating act.

11. This penalty is also unlawful because it is grossly disproportionate to the nature of the underlying offense. As such, it violates the Eighth Amendment's prohibition against excessive fines and the Administrative Procedure Act's prohibition against arbitrary, capricious, or otherwise unlawful agency action.

12. Plaintiff asks the Court for, *inter alia*, injunctive and declaratory relief (a) declaring unlawful OFAC's policy and practice of requiring individuals to provide potentially self-incriminating information under threat of civil penalty, (b) enjoining OFAC from making such threats and from issuing such penalties, (c) setting aside the penalty imposed by OFAC against Plaintiff for failing to provide information in response to such threats, and (d) enjoining the Department of Justice from collecting funds from Plaintiff to satisfy any penalties imposed by OFAC for failure to provide information under such circumstances.

## PARTIES

13. Plaintiff Zachary Sanders (hereinafter "Plaintiff" or "Mr. Sanders") is a United States citizen and a resident of the state of New York. At the time the Prepenalty Notice was issued, he lived in Brooklyn, New York.

14. Defendant Adam Szubin is the Director of the Office of Foreign Assets Control, the branch of the Department of the Treasury charged with enforcing the Cuba Travel Restrictions.

15. Defendant Timothy Geithner is the Secretary of the United States Department of the Treasury. As head of the Department of Treasury, Defendant Geithner is ultimately responsible for OFAC's actions and its enforcement of the Cuba Travel Restrictions. Defendant

Geithner also is responsible for the actions of the Treasury Department official designated by him to consider appeals of Administrative Law Judge decisions made in penalty proceedings held pursuant to the Cuba Travel Restrictions.

16.     Defendant Eric H. Holder is the Attorney General of the United States.  As head of the Department of Justice, Defendant Holder is ultimately responsible for the collection of penalties imposed by OFAC under the Cuba Travel Restrictions.

## JURISDICTION AND VENUE

17.     This court has jurisdiction over this action pursuant to  5 U.S.C. § 702 and 28 U.S.C. § 1331.

18.     The Court has authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202, Rules 57 and 65 of the Federal Rules of Civil Procedure, the Administrative Procedures Act, 5 U.S.C. § 706, and its inherent equitable powers.

19.     The Eastern District of New York is a proper venue for this action under 28 U.S.C. § 1391(e)(3) because it is the district in which the plaintiff resides and no real property is involved in the action.

## STATEMENT OF FACTS

20.     OFAC sent Mr. Sanders a "Requirement to Furnish Information" dated March 1, 2000, bearing OFAC serial number CU-179778, regarding an alleged trip to Cuba in June 1998. This RFI is appended to this Complaint as Exhibit A.

21.     Through the RFI, OFAC ordered Mr. Sanders to provide details about the alleged trip to Cuba, pursuant to OFAC's putative authority to request such information under 31 C.F.R. § 501.602.

4

22.    The RFI received by Mr. Sanders followed OFAC's standard model and read in part as follows:

> Pursuant to the [Cuban Assets Control Regulations, 31 CFR Part 515,] and section 501.602 of the Reporting and Procedures Regulations, 31 CFR Part 501, you are hereby required to provide this Office with a detailed written report concerning your alleged trip to Cuba. Your report must specifically respond to all the items enumerated in the enclosure to this letter that are relevant to your trip. ... [P]lease sign and date your report.
>
> Your report is due at OFAC within 20 business days from date of receipt of this letter. .... You should be aware that failure to respond is a violation that may result in the imposition of civil penalties.

The enclosure sent to Mr. Sanders with the RFI requests that he provide, *inter alia*, his dates of travel, the "[r]eason for your trip to Cuba," amounts paid for a Cuban visa and lodging, "[a] complete itemization of any and all other currency expenditures by you while in Cuba," and the "name and address of all travel companions."

23.    On March 22, 2000, Mr. Sanders requested an extension of the response deadline by telephone. OFAC granted an extension of time to April 24, 2000.

24.    OFAC alleges that Mr. Sanders did not respond to the RFI within the extended deadline.

25.    On February 13, 2002—twenty-two months later—OFAC issued a Prepenalty Notice ("PPN") (Exhibit B) proposing a $10,000 administrative penalty against Mr. Sanders, based not on any alleged unlicensed spending during his alleged trip to Cuba, but rather based *solely* on the alleged failure to respond to the RFI.

26.    Specifically, OFAC asserted that Mr. Sanders committed a violation by "fail[ing] to respond to a Requirement to Furnish Information issued by OFAC concerning [his] travel-related transactions to, from, and within Cuba in June 1998."

5

27.    OFAC makes no allegation in the PPN that Mr. Sanders engaged in violations of the Cuba Travel Restrictions during his travel to Cuba. Rather, the only violation described in the PPN is Mr. Sanders's failure to respond to the RFI.

28.    Congress has mandated that, prior to imposition of a civil penalty for violation of any "order, rule, or regulation issued in compliance with [the TWEA]," which includes the Cuba Travel Restrictions, OFAC allow the party subject to the penalty an "opportunity for an agency hearing" in accordance with §§ 554-557 of the Administrative Procedure Act. Cuban Democracy Act of 1992, Pub. L. No. 102-484, sec. 1710(c)(2), 106 Stat. 2315, 2580-81 (Oct. 23, 1992) (codified at 50 U.S.C. Appx. § 16(b)(3)).

29.    Mr. Sanders responded *pro se* to the PPN by letter dated March 10, 2002 addressed to then-Director of OFAC, R. Richard Newcomb. In this letter, Mr. Sanders requested an agency hearing and pre-hearing discovery as provided for by statute and by the Cuba Travel Restrictions.

30.    Mr. Sanders eventually retained an attorney to represent him in relation to the PPN, and she filed a supplemental discovery request dated April 29, 2002.

31.    Although Congress mandated in 1992 that an "opportunity for an agency hearing" be made available, OFAC failed to appoint Administrative Law Judges or any other officials to hear Cuba travel cases until the fall of 2003.

32.    Even though Mr. Sanders requested a hearing in 2002, OFAC did not commence a hearing until 2005, when it finally issued an Order Instituting Proceedings. Administrative Law Judge Irwin L. Schroeder from the Office of Medicare Hearings and Appeals was assigned to Mr. Sanders's case.

6

33. Mr. Sanders, through counsel, filed a Motion for Summary Disposition dated May 20, 2005, asking ALJ Schroeder to dismiss the charges and proposed penalty primarily on the ground that they sought to punish him for failing to obey OFAC's requirement to perform a potentially self-incriminating act.

34. On June 27, 2005, ALJ Schroeder held a hearing concerning the proposed penalty against Mr. Sanders.

35. Over three years later, ALJ Schroeder issued an "Administrative Law Judge Recommended Decision" dated September 4, 2008 (attached as Exhibit C), in which he concluded that the Fifth Amendment right against self-incrimination applied in the context of the RFI, but nevertheless affirmed the imposition of a penalty against Mr. Sanders "for failure to respond to a request for information about a trip to Cuba."

36. ALJ Schroeder recommended that Mr. Sanders be fined $1,000 for his failure to respond to the RFI.

37. Pursuant to procedures set forth in the Cuba Travel Restrictions, Mr. Sanders appealed ALJ Schroeder's ruling to the then-Secretary of Treasury Henry Paulson's designee, Deputy Assistant Secretary Dan Iannicola, Jr.

38. OFAC cross-appealed ALJ Schroeder's ruling, seeking a $10,000 penalty even though it had sought a $9,000 penalty throughout the proceedings before ALJ Schroeder.

39. The Secretary's designee, by order dated October 24, 2008, refused to hear Mr. Sanders's constitutional claims or any other substantive challenge to the penalty. Instead, the Secretary's designee limited the parties to arguing "the question of whether Judge Schroeder erred in the appropriateness of the amount of the penalty assessed." (See Exhibit D.)

40.     On January 16, 2009, the last business day of the previous presidential administration, the Secretary's designee issued a "Determination and Order" (attached as <u>Exhibit E</u>), affirming the penalty and increasing it to $9,000.

41.     On February 26, 2009, present counsel for Mr. Sanders sent the Secretary's designee, Mr. Iannicola, a correspondence asking whether he had engaged in any ex parte communications about Mr. Sanders's case with any representatives or agents of the United States.

42.     The Cuba Travel Restrictions prohibit the Secretary's designee from engaging in ex parte communications with any party, interested person, or representative about proceedings covered by those regulations, 31 C.F.R. §§ 501.702(e), 501.719(a).

43.     To date, Plaintiff's counsel has not received a response to this inquiry.

44.     It has been clear since *Leary v. United States*, 395 U.S. 6, 28 (1969), that "failure to obey a statute which require[s] an incriminatory act" cannot be punished, even in the absence of an affirmative assertion of the Fifth Amendment privilege against self-incrimination.

45.     While exceptions exist for requirements to produce "required records," the information demanded by OFAC in the RFI cannot qualify as required records because, *inter alia*, the requirement to provide information is directed at a class inherently suspect of criminal activity.

46.     The information requested by OFAC through the RFI is potentially incriminatory because the Trading with the Enemy Act, ("TWEA"), 50 U.S.C. Appx. § 16, specifically makes any willful violation of regulations promulgated under it (such as the Cuba Travel Restrictions) a criminal violation subject to criminal fines, imprisonment, or both.

47.     The recordkeeping and reporting provisions of 31 C.F.R. Part 501 (the authority on which OFAC relies in issuing RFIs) purport to be applicable to all "economic sanctions

programs for which implementation and administration are delegated to the Office of Foreign Assets Control." 31 C.F.R. § 501.101, § 501.606.

48.     In the RFI, OFAC claims that 31 C.F.R. § 501.602 authorizes the demands made through that document. In part, section 501.602 states:

> Every person is required to furnish under oath, in the form of reports or otherwise, from time to time and at any time as may be required by the Director, Office of Foreign Assets Control, complete information relative to any transaction, regardless of whether such transaction is effected pursuant to license or otherwise, subject to the provisions of this chapter.

49.     Over the past fifteen years, sanctions programs administered and implemented by OFAC have included the restrictions on transactions (including, in some instances, travel-related transactions) with Cuba, Iran, Iraq, Libya, parts of the former Yugoslavia, and various designated terrorist entities.

50.     Over the last decade, OFAC has issued numerous RFIs to persons suspected of violating its regulations restricting transactions related to travel to Cuba and Iraq, and, on information and belief, issues RFIs to persons suspected of violating its sanctions regulations against other nations and entities as well.

51.     These OFAC sanctions programs were authorized by a variety of statutes, including TWEA, the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701, et seq., and the U.N. Participation Act ("UNPA"), 22 U.S.C. § 287c (for regulations implementing United Nations sanctions), among others.

52.     Like TWEA, IEEPA and UNPA contain provisions making certain violations of regulations promulgated under those statutes criminal offenses. See, e.g., IEEPA, 50 U.S.C. § 1705(b); UNPA, 22 U.S.C. § 287c(b).

53. OFAC uses responses to RFIs to determine whether to refer cases to the Justice Department for criminal prosecution or to the Civil Penalties Division of OFAC for civil penalties prosecution. *See* 68 Fed. Reg. 4422, 4425 (Jan. 29, 2003) (stating, in introduction to proposed Appendix to Part 501, "If the evidence suggests willful violations of substantive prohibitions or requirements, OFAC may refer those cases to other federal law enforcement agencies for criminal investigation.").

54. Criminal prosecutions take place under the regulatory regimes enforced by OFAC. *See* Testimony of then-OFAC Director R. Richard Newcomb, House Financial Services Subcommittee on Oversight and Investigations (June 16, 2004) ("Since 1995, there have been approximately 68 cases that resulted in criminal enforcement action for TWEA and the International Emergency Economic Powers Act ('IEEPA') violations.")

55. Plaintiff's present counsel, the Center for Constitutional Rights, has previously challenged final penalties imposed by OFAC for alleged failures to respond to RFIs.

56. Two such challenges led to separate federal court actions, *Frank v. Snow*, 04-cv-00957 (D.D.C.) (filed June 10, 2004), and *Sanders v. Snow*, 05-cv-00471 (D.D.C.) (filed Mar. 7, 2005). In both instances, the Center for Constitutional Rights raised legal arguments based on the *Leary* case to OFAC in an attempt to resolve the matters.

57. In *Frank*, OFAC dismissed the $10,000 penalty in exchange for Ms. Frank's agreement to dismiss the claims in the complaint. Similarly, in *Sanders*, OFAC agreed to dismiss the $10,000 penalty against one of the plaintiffs, on the condition that he dismiss his claims against OFAC.

58. Despite being on notice of the illegality of these penalties (and the unenforceability of the threat of such penalties set forth in the standard RFI form), OFAC

continued to pursue such penalties against Plaintiff Zachary Sanders' and, upon information and belief, against others.

### FIRST CAUSE OF ACTION
U.S. CONST. amend. V
**(Fifth Amendment privilege against self-incrimination)**

59.     Plaintiff repeats and realleges the allegations contained in the preceding paragraphs with the same force and effect as though fully set forth herein.

60.     The penalty imposed against Plaintiff by Defendants is unlawful because it punishes failure to obey a requirement to perform a potentially self-incriminating act, thereby violating Plaintiff's rights under the Fifth Amendment to the United States Constitution.

### SECOND CAUSE OF ACTION
Administrative Procedure Act, 5 U.S.C. § 701, *et seq.*
**(Arbitrary or capricious agency action)**

61.     Plaintiff repeats and realleges the allegations contained in the preceding paragraphs with the same force and effect as though fully set forth herein.

62.     The $9,000 penalty imposed against Plaintiff by Defendants is arbitrary and capricious because it is completely disproportionate to the nature of the asserted violation.

### THIRD CAUSE OF ACTION
U.S. CONST. amend. VIII
**(Eighth Amendment ban on excessive fines)**

63.     Plaintiff repeats and realleges the allegations contained in the preceding paragraphs with the same force and effect as though fully set forth herein.

64.     The $9,000 penalty imposed against Plaintiff by Defendants violates the constitutional prohibition on excessive fines because it is grossly disproportionate to the nature of the asserted violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a)   Declare the penalty imposed against Mr. Sanders by Defendants to be arbitrary, capricious, unlawful, and/or void, and enjoin any further efforts at enforcing or collecting such penalty against Plaintiff;

b)   Declare OFAC's practice of threatening and issuing penalties for failure to comply with the demands of the Requirement to Furnish Information to be unlawful, and enjoin such practices;

c)   Award costs, including an award of attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A);

d)   Award such other relief as the Court may deem just and proper.

Respectfully submitted,

Anjana Samant

CENTER FOR CONSTITUTIONAL RIGHTS
Anjana Samant  AS5163
Darius Charney  DC1619
666 Broadway, 7th Floor
New York, NY  10012-2317
(212) 614-6438

SOKOLSKI & ZEKARIA, P.C.
Daphna Zekaria
305 Broadway, Ste. 402
New York, NY 10007
(212) 571-4080

**COUNSEL FOR PLAINTIFF**

Dated: July 16, 2009



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

MAR

FAC No. CU-179778

<u>REQUIREMENT TO FURNISH INFORMATION</u>

Zachary John Sanders
1407 S.E. Salmon Street
Portland, OR 97214

Dear Mr. Sanders:

The Office of Foreign Assets Control ("OFAC") administers a comprehensive trade embargo against Cuba as set forth in the Cuban Assets Control Regulations, 31 C.F.R. Part 515 (the "Regulations"). Section 515.201(b) of the Regulations prohibits all unauthorized travel-related transactions with respect to Cuba by persons subject to the jurisdiction of the United States. Travel-related transactions may be authorized only through general or specific licenses issued by OFAC.

OFAC has received information from the US Customs Service, Nassau, Bahamas indicating that you traveled to Cuba during June 1998. This Office has no record that a specific license was issued authorizing you to engage in travel-related transactions involving Cuba.

Pursuant to the Regulations and section 501.602 of the Reporting and Procedures Regulations, 31 CFR Part 501, you are hereby required to provide this Office with a detailed written report concerning your alleged trip to Cuba. Your report must specifically respond to all the items enumerated in the enclosure to this letter that are relevant to your trip. (If you believe a question is not relevant, indicate that in your response.) If you find it convenient, you may provide handwritten or typed responses directly on the enclosure; however, if you do so, please sign and date each page. If you do not use the enclosure, please sign and date your report.

If it is your claim that your travel-related transactions in Cuba were fully hosted, you must provide a detailed statement and supporting documentation from your host in accordance with § 515.420 of the Regulations (enclosed) in order to overcome the presumption that you engaged in unlicensed travel-related transactions.

-2-

Your report is due at OFAC within 20 business days from date of receipt of this letter and should be addressed as follows:

U.S. Department of the Treasury
Office of Foreign Assets Control
Attn:  Carol Joubert-Lin
1500 Pennsylvania Avenue, N.W. (Annex)
Washington, D.C. 20220.

You should be aware that failure to respond is a violation that may result in the imposition of civil penalties.  If you have any questions, please call Mrs. Joubert-Lin at (202) 622-2430.

Sincerely,

David H. Harmon
Chief, Enforcement Division
Office of Foreign Assets Control

Enclosures

# OFFICE OF FOREIGN ASSETS CONTROL

## ENCLOSURE TO REQUIREMENT TO FURNISH INFORMATION:

1. Dates of travel (include date and point of departure from the U.S., third country stopover points, date of arrival in and departure from Cuba and date of return to the U.S.).

2. Reason for your trip to Cuba.

3. Cost of your airline or ocean vessel tickets and the name of the individual or entity that paid for each ticket (provide a copy of each ticket receipt).

4. The name and address of any travel agency that you used to arrange travel to Cuba, the service each agency provided to you and the amount you paid to each agency (provide a copy of receipts).

5. How did you obtain a visa to visit Cuba (provide the name and address of company or person who assisted you and the amount you paid for this service)?

6. Your itinerary while in Cuba.

7. The name and location of hotel(s) or other place(s) where you stayed while in Cuba and the amount you paid (include method of payment and receipts).

_____        _____        _____
Print Name             Signature              Date

TD/OFAC/ENF/cjl

-1-

8. A complete itemization of any and all other currency expenditures by you while in Cuba for such items as, but not limited to, food, transportation, entertainment, souvenirs, Customs fees, taxes, marina fees, etc. (indicate the amount for each expenditure).

    a. If you purchased any goods or products in Cuba, did you leave Cuba with them for your return trip to the U.S.? If so, please explain.

9. The name and address of any third party(s) that paid for any of your travel-related transactions to, from or within Cuba and the reason for such payment on your behalf. (If your trip was prepaid by you to another party prior to your departure, provide the name and address of the party and the amount you prepaid ((furnish receipts)).

10. Name and address of any third party(s) that reimbursed you for your Cuba travel expenses at a later date and the reason for such reimbursement.

11. Describe any services which you performed in exchange for airline or vessel passage to Cuba or for payment of any travel-related expenses while in Cuba (provide the name and address of all parties involved).

12. Fully describe any and all business activities in which you were involved while in Cuba (provide a copy of any contracts, letters of understanding or other forms of agreement signed by you while in Cuba).

13. The name and address of all travel companions who accompanied you on your trip.

14. Any additional information which you may wish OFAC to consider concerning your trip to Cuba.

| | | |
|---|---|---|
| Print Name | Signature | Date |

TD/OFAC/ENF/cjl

-2-

collection of information displays a valid control number.

**List of Subjects in 31 CFR Part 515**

Administrative practice and procedure, Air carriers, Banks, banking, Blocking of assets, Cuba, Currency, Estates, Exports, Foreign investment in the United States, Foreign trade, Imports, Informational materials, Intellectual property, Penalties, Publications, Reporting and recordkeeping requirements, Securities, Shipping, Specially designated nationals, Terrorism, Travel restrictions, Trusts and trustees, Vessels.

For the reasons set forth in the preamble, 31 CFR part 515 is amended as set forth below:

**PART 515—CUBAN ASSETS CONTROL REGULATIONS**

1. The authority citation for part 515 continues to read as follows:

**Authority:** 18 U.S.C. 2332d; 22 U.S.C. 2370(a), 6001–6010, 6021–6091; 31 U.S.C. 321(b); 50 U.S.C. App. 1–44; Pub. L. 101–410, 104 Stat. 890 (28 U.S.C. 2461 note); Pub. L. 105–277; E.O. 9193, 7 FR 5205, 3 CFR, 1938–1943 Comp., p. 1147; E.O. 9989, 13 FR 4891, 3 CFR, 1943–48 Comp., p. 748; Proc. 3447, 27 FR 1085, 3 CFR 1959–1963 Comp., p. 157; E.O. 12854, 58 FR 36587, 3 CFR, 1993 Comp., p. 614.

**Subpart B—Prohibitions**

2. Section 515.206 is amended as follows:

A. The section heading is revised to read as set forth below.

B. Paragraphs (a) through (d) are redesignated as paragraphs (a)(1) through (a)(4).

C. A heading for paragraph (a) is added as set forth below.

D. Redesignated paragraph (a)(3) is amended by removing the words "section 779 of the Export Administration Regulations, 15 CFR parts 768–799," and adding in their place the words "the Export Administration Regulations, 15 CFR parts 730–774,".

E. Redesignated paragraph (a)(4) is amended by removing the words "§ 515.560 or by specific license." and adding in their place "§ 515.545.".

F. New paragraph (b) is added to read as follows:

**§ 515.206 Exempt transactions.**

(a) *Information and informational materials.* (1) * * *

* * * * *

(b) *Donation of food.* The prohibitions contained in this part do not apply to transactions incident to the donation of

food to nongovernmental organizations or individuals in Cuba.

**Subpart C—General Definitions**

3. Section 515.302 is amended as follows:

A. Paragraph (b) is redesignated as new paragraph (c).

B. New paragraph (b) is added to read as follows:

**§ 515.302 National.**

* * * * *

(b) Persons who travel in Cuba do not become nationals of Cuba solely because of such travel.

* * * * *

**Subpart D—Interpretations**

4. Section 515.407 is amended by revising "§ 515.568" to read "§ 515.522".

**§ 515.415 [Amended]**

5. Section 515.415 is amended as follows:

A. Paragraph (b) is amended by revising "§ 515.584" to read "§ 515.571".

B. Paragraph (c) is amended by removing the words "within the general license of § 515.560" and adding in their place "as set forth in § 515.560(c)".

**§ 515.416 [Removed and reserved]**

6. Section 515.416 is removed and reserved.

**§ 515.417 [Removed and reserved]**

7. Section 515.417 is removed and reserved.

**§ 515.418 [Amended]**

8. Paragraph (b) of § 515.418 is amended by revising "515.560(b)", wherever it appears, to read "515.545".

**§ 515.419 [Removed and reserved]**

9. Section 515.419 is removed and reserved.

10. Section 515.420 is added to Subpart D to read as follows:

**§ 515.420 Fully-hosted travel to Cuba.**

(a) A person subject to the jurisdiction of the United States who is not authorized to engage in travel-related transactions in which Cuba has an interest will not be considered to violate the prohibitions of this part when a person not subject to the jurisdiction of the United States covers the cost of all transactions related to the travel of the person subject to the jurisdiction of the United States (the "fully-hosted" traveler), provided that:

(1) No person subject to the jurisdiction of the United States has

made any payments or transferred any property or provided any service to Cuba or a Cuban national in connection with such fully-hosted travel or has prepaid or reimbursed any person for travel expenses, except as authorized in paragraph (b) of this section; and

(2) The travel is not aboard a direct flight between the United States and Cuba authorized pursuant to § 515.572.

(b) Travel will not be considered fully hosted notwithstanding a payment by a person subject to the jurisdiction of the United States for transportation to and from Cuba, provided that the carrier furnishing the transportation is not a Cuban national. Persons authorized to travel service providers pursuant to § 515.572 may book passage on behalf of fully-hosted travelers through to Cuba, provided that such travel is not on a direct flight from the United States and that the carrier furnishing the transportation is not a Cuban national.

(c) Unless otherwise authorized pursuant to this part, any person subject to the jurisdiction of the United States who has traveled to Cuba shall be presumed to have engaged in travel-related transactions prohibited by § 515.201. This presumption may be rebutted by a statement signed by the traveler providing specific supporting documentation showing that no transactions were engaged in by the traveler or on the traveler's behalf by other persons subject to U.S. jurisdiction or showing that the traveler was fully hosted by a third party not subject to the jurisdiction of the United States and that payments made on the traveler's behalf were not in exchange for services provided to Cuba or any national thereof. The statement should address the circumstances of the travel and explain how it was possible for the traveler to avoid entering into travel-related transactions such as payments for meals, lodging, transportation, bunkering of vessels, visas, entry or exit fees, and gratuities. If applicable, the statement should state what party hosted the travel and why. The statement must provide a day-to-day account of financial transactions waived or entered into on behalf of the traveler by the host, including but not limited to visa fees, room and board, local or international transportation costs, and Cuban airport departure taxes. In the case of pleasure craft calling at Cuban marinas, the statement must also address related refueling costs, mooring fees, club membership fees, provisions, cruising permits, local land transportation, and departure fees. Travelers fully hosted by a person or persons not subject to the jurisdiction of the United States must also provide an

original signed statement from their sponsor or host, specific to that traveler, confirming that the travel was fully hosted and the reasons for the travel.

Note to paragraph (a): Travelers should be aware that fully-hosted travelers are not travelers whose travel-related transactions are licensed pursuant to this part and therefore such fully-hosted travel may not engage in the travel-related transactions set forth in § 515.560(c), including the purchase and importation of up to $100 of Cuban merchandise for personal use. All documentation described in paragraph (c) of this section is subject to the recordkeeping requirements, including the record retention period, in § 501.601 of this chapter.

(d) Persons planning to travel to Cuba may access the Office of Foreign Assets Control's information resources over the Internet at http://www.treas.gov/ofac, through the office's fax-on-demand service at 202/622–0077, or by calling the office's Compliance Programs Division at 202/622–2480, prior to their departure to familiarize themselves with the requirements for fully-hosted travel. Other inquiries concerning travel-related transactions should be addressed to the Licensing Division, Office of Foreign Assets Control, U.S. Department of the Treasury, 1500 Pennsylvania Avenue, NW—Annex, Washington, DC 20220.

**Subpart E—Licenses, Authorizations, and Statements of Licensing Policy**

**§ 515.518   [Removed and reserved]**

11. Section 515.518 is removed and reserved.

**§§ 515.521, 515.563, 515.564, 515.565, 515.569, 515.573   [Removed]**

12. Sections 515.521, 515.563, 515.564, 515.565, 515.569, and 515.573 are removed.

13. The sections listed in the first column below are redesignated as shown in the second column:

| Old Section | New Section |
|---|---|
| § 515.540 | § 515.559 |
| § 515.558 | § 515.546 |
| § 515.562 | § 515.558 |
| § 515.566 | § 515.572 |
| § 515.567 | § 515.521 |
| § 515.568 | § 515.522 |
| § 515.571 | § 515.560 |
| § 515.572 | § 515.573 |

**§ 515.523   [Amended]**

14. Paragraph (b)(3) of § 515.523 is amended by revising "§ 515.568" to read "§ 515.522".

**§ 515.525   [Amended]**

15. Paragraph (b) of § 515.525 is amended by revising "§ 515.523, § 515.568" to read "§ 515.522, § 515.523".

16. Section 515.527 is amended by designating the existing text as paragraph (a)(1) and adding paragraph (a)(2) to read as follows:

**§ 515.527   Certain transactions with respect to United States intellectual property.**

(a)(1) * * *

(2) No transaction or payment is authorized or approved pursuant to paragraph (a)(1) of this section with respect to a mark, trade name, or commercial name that is the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated, as that term is defined in § 515.336, unless the original owner of the mark, trade name, or commercial name, or the bona fide successor-in-interest has expressly consented.

* * * * *

17. In § 515.533, the section heading is revised; the introductory text of paragraph (a) and paragraphs (a)(1) and (d) are revised; and paragraphs (e) and (f) and a note to the section are added to read as follows:

**§ 515.533   Transactions incident to exportations from the United States to Cuba.**

(a) All transactions ordinarily incident to the exportation of goods, wares, and merchandise from the United States to any person within Cuba are hereby authorized, provided the following terms and conditions are complied with:

(1) The exportation is licensed or otherwise authorized by the Department of Commerce under the provisions of the Export Administration Act of 1979, as amended (50 U.S.C. app. 2401–2420) (see the Export Administration Regulations, 15 CFR 730–774); and

* * * * *

(d) This section does not authorize any exportation under License Exception GFT, 15 CFR 740.12, except gift parcels that contain only food, vitamins, seeds, medicines, medical supplies and devices, hospital supplies and equipment, equipment for the handicapped, clothing, personal hygiene items, veterinary medicines and supplies, fishing equipment and supplies, soap-making equipment, or certain radio equipment and batteries for such equipment, as specifically set forth in 15 CFR 740.12, and that

otherwise comply with the requirements of that section.

(e) Specific licenses may be issued on a case-by-case basis authorizing the travel-related transactions set forth in § 515.560(c) and other transactions that are directly incident to the marketing, sales negotiation, accompanied delivery, or servicing of exports that appear consistent with the export licensing policy of the Department of Commerce.

(f) This section does not authorize trade financing with respect to the commercial sale of food or agricultural commodities.

Note to § 515.533: For the waiver of the prohibition contained in § 515.207 on certain vessel transactions for vessels transporting shipments of goods, wares, or merchandise between the United States and Cuba pursuant to this section, see § 515.550.

**§ 515.540   [Removed and reserved]**

18. Section 515.540 is removed and reserved.

19. Section 515.545 is amended as follows:

A. Paragraph (b) is amended by revising "§ 515.206(c)" to read "§ 515.206(a)(3)".

B. Paragraph (c) is added to read as follows:

**§ 515.545   Transactions related to information and informational materials.**

* * * * *

(c) Specific licenses may be issued on a case-by-case basis authorizing the travel-related transactions set forth in § 515.560(c) for purposes related to the exportation, importation, or transmission of information or informational materials as defined in § 515.332.

20. Newly redesignated § 515.550 is revised to read as follows:

**§ 515.550   Certain vessel transactions authorized.**

Unless a vessel has otherwise engaged in transactions that would prohibit entry pursuant to § 515.207, § 515.207 shall not apply to a vessel that is:

(a) Engaging in trade with Cuba authorized by licenses issued pursuant to § 515.533 or § 515.559; or

(b) Engaging in trade with Cuba that is exempt from the prohibitions of this part (see § 515.206).

**§ 515.551   [Amended]**

21. Paragraph (a)(3) of § 515.551 is amended by revising "§ 515.568" to read "§ 515.522".

**§ 515.556   [Removed and reserved]**

22. Section 515.556 is removed and reserved.

23. Section 515.559 is amended by adding paragraph (b)(2) and a note to the section to read as follows:



# DEPARTMENT OF THE TREASURY
### WASHINGTON, D.C. 20220

FAC No.  CU-179778

FEB 13 2002

## PREPENALTY NOTICE

Dear Mr. Sanders:

The Office of Foreign Assets Control ("OFAC") has reasonable cause to believe that you failed to respond to a Requirement to Furnish Information issued pursuant to § 501.602 of the Reporting and Procedures Regulations, 31 CFR Part 501 ("RPR") and requesting information related to your transactions in which the Government of Cuba or a national thereof may have had an interest.  Failure to respond to such a Requirement to Furnish Information is a violation of the Cuban Assets Control Regulations, 31 CFR Part 515 ("Regulations"), promulgated pursuant to the Trading with the Enemy Act, 50 U.S.C. App. §§ 1-44 ("TWEA"), and the Cuban Democracy Act, 22 U.S.C. §§ 6001-10.  See § 515.201 of the Regulations.

## Violation(s)
The violation for which this Prepenalty Notice ("Notice") is issued concerns your failure to respond to a Requirement to Furnish Information issued by OFAC concerning your travel-related transactions to, from, and within Cuba in June 1998. The violation is as follows:

On March 1, 2000, OFAC issued to you a Requirement to Furnish Information ("Requirement") pursuant to the RPR.  The Requirement set a response deadline of 20 days from the date of your receipt of the Requirement. The questions contained in the Requirement sought information regarding the facts and circumstances surrounding your travel to Cuba and the importation of Cuban-origin goods.[1] In response to your telephonic request on March 22, 2000 for an extension, OFAC, by letter dated April 12, 2000, granted your request by extending the response deadline to April 24, 2000.  To date, you have not responded to the Requirement.

## Proposed Penalty
Section 16 of TWEA, 50 U.S.C. App. § 16, provides, in part, for a civil penalty not to exceed $50,000 for each such violation[2].  Pursuant to §515.702 of the Regulations, you are hereby notified that OFAC intends to issue a claim against you for a monetary penalty in the amount of $10,000 for violation as stated above.

---

1. The United States Customs Service ("USCS") seized from you one (1) box of Cuban-origin cigars on June 7, 1998, at the US Pre-Clearance Facility in Nassau, Bahamas.
2. Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990 (Pub.L. 101-410, 104 Stat. 890, 28 U.S.C. 2461 note), as amended by the Debt Collection Improvement Act of 1996 (Pub.L. 104-134, sec. 31001(s)1), Apr. 26, 1996, 110 Stat. 1321-373--jointly, the "FCPIA"), requires each Federal agency with statutory authority to assess civil monetary penalties ("CMPs") to adjust CMPs for inflation according to a formula described in § 5 of the FCPIA. Accordingly, on October 23, 1996, OFAC published in the Federal Register the required amendment, effective October 21, 1996, to the Regulations adjusting its CMP to $55,000. See 61 FR 54936 at 54939.

**Rights and Procedures**
The portion of the attached document entitled "RIGHTS AND PROCEDURES"
describes your rights and the procedures to be followed in responding to
this Notice.  It is a formal part of this Notice and is included herein by
reference.  Please note that you have 30 days, as set out in the attached
document, to respond to this Notice.

Sincerely,

R. Richard Newcomb
Director
Office of Foreign Assets Control

Mr. Zachary J. Sanders
207 Green Street, #1-L
Brooklyn, NY  11222

Enclosure(s)

# CIVIL PENALTIES

U.S. Department of the Treasury
Office of Foreign Assets Control

## Rights and Procedures -- Cuba Program

### A. Your Rights

■ **RIGHT TO RESPOND IN WRITING** - You have the right to respond to the Office of Foreign Assets Control ("OFAC") in writing within 30 days of the mailing or other service of your Prepenalty Notice. In your written response, you should state why you believe there should not be a penalty and/or forfeiture, or why the penalty should be less than the amount proposed in your Penalty Notice. You must admit or deny each of the alleged violations listed in the "Violations" section of your Prepenalty Notice. If you do not address a particular alleged violation, OFAC will consider that you have admitted that violation. Any defense or explanation you have previously made to OFAC, the U.S. Customs Service, or any other agency must be repeated in your written response. Any defense you have that you do not raise in your written response will be considered waived. You must sign your written response. If you do not submit a written response, OFAC generally will issue you a final Penalty Notice imposing the penalty proposed in your Prepenalty Notice.

■ **RIGHT TO AGENCY HEARING AND PRE-HEARING DISCOVERY** - You have the right to an agency hearing in Washington, D.C. to present your defenses to the imposition of the penalty and/or forfeiture proposed in your Prepenalty Notice. You also have the right to pre-hearing discovery, including review of all non-privileged documents that OFAC used as the basis for issuing your Prepenalty Notice. If you wish to request an agency hearing and pre-hearing discovery, you must include these requests in your written response. A mere reservation of your right to a hearing and pre-hearing discovery in your written response will not be considered by OFAC to assert or preserve your hearing and pre-hearing discovery rights. If you do not include requests for a hearing and pre-hearing discovery in your written response, filed by the due date specified in "B" below, you will waive these rights. OFAC will then proceed to determine whether to impose, reduce, or cancel the penalty and/or forfeiture proposed in your Prepenalty Notice based on any written response you have submitted and any relevant facts. Sections 515.705-.717 of the Cuban Assets Control Regulations, 31 C.F.R. Part 515, explain the hearing procedures. You may also withdraw a hearing request once made and seek administrative determination, but the withdrawal must be made in writing.

Please note that OFAC is currently suspending all discovery deadlines that follow receipt of any request for a hearing and pre-hearing discovery. If you request a hearing and pre-hearing discovery, OFAC will inform you as soon as those discovery deadlines are reinstated.

■ **RIGHT TO JUDICIAL REVIEW** - If OFAC eventually imposes a penalty and/or forfeiture in this matter, you have the right to seek judicial review of that final agency action in a federal court.

### B. Due Date

If your Prepenalty Notice was mailed to you, your written response must be postmarked or date-stamped by the U.S. Postal Service (or foreign postal service, if mailed abroad) or courier service provider (if transmitted to OFAC by courier) on or before the 30th day after the postmark date on the envelope in which you received your Prepenalty Notice. If you refused delivery or otherwise avoided receipt, on or before the 30th day after the date on OFAC's stamped postal receipt.

If your Prepenalty Notice was personally delivered to you (not mailed), your written response must be postmarked or date-stamped, as described above,

on or before the 30th day after the date of delivery. If you choose to send a copy of your written response by facsimile (202/622-1657), you must also send your response to OFAC by mail or courier and your response must be postmarked or date-stamped, as described above, on or before the applicable due date listed above. If a due date falls on a federal holiday or weekend, that due date is extended to include the following business day.

### C. OFAC's Mailing Address

Office of Foreign Assets Control, Civil Penalties Program, U.S. Department of the Treasury, 1500 Pennsylvania Avenue, N.W., Washington, D.C. 20220.

### D. Election of Proceedings (options available to you)

■ **ADMINISTRATIVE DISPOSITION** - You may submit a written response, as described in A. above, to OFAC concerning your Prepenalty Notice. OFAC will review your written response and determine whether to impose, reduce, or cancel the penalty proposed in your Prepenalty Notice.

■ **DEFAULT** - If you do not submit a written response within the relevant 30 day period, OFAC generally will issue you a final Penalty Notice assessing the penalty proposed in your Prepenalty Notice.

■ **AGENCY HEARING** - You may request an agency hearing and pre-hearing discovery (as described in A. above) in your written response. Please note the current suspension of discovery deadlines explained in A. above. If a hearing is requested, the final disposition of your case will be determined by a hearing officer.

■ **SETTLEMENT** - You may call the OFAC contact person listed below if you wish to negotiate a settlement to resolve this matter informally. A settlement can be reached anytime before you are issued a Penalty Notice or if you decide to withdraw a hearing request after you have made one. Please note that settlement talks do not take the place of a written response and the existence of settlement talks will not postpone the 30-day due date for submission of your written response including your requests for a hearing and pre-hearing discovery, unless a settlement is reached prior to that 30-day due date.

### E. Collection

If OFAC issues you a final Penalty Notice after reviewing any timely written response you may have submitted, you have 30 days to remit or otherwise make arrangements for payment. Any penalty not timely paid will be referred for administrative collection measures or to the United States Department of Justice for collection litigation. Please note that any person issued a penalty by a federal agency must provide a taxpayer identification number/Social Security number. OFAC discloses that it intends to use that number for collecting and reporting any delinquent penalty amount(s).

### F. Contact Person

Please feel free to contact Mrs. B.S. Scott, Chief, Civil Penalties Program, (202) 622-6140, if you have any questions or if you wish to discuss informal settlement of this proposed penalty.
- see inside -

## FREQUENTLY ASKED QUESTIONS ABOUT OFAC CIVIL PENALTIES

The following Questions and Answers have been prepared in an effort to assist you in understanding the procedures followed by the Office of Foreign Assets Control ("OFAC") in administering its Civil Penalties Program. These Questions and Answers are not part of your Prepenalty Notice nor are they formal interpretations of any law or regulations administered by OFAC. Accordingly, although every attempt has been made to provide Questions and Answers that are useful and accurate, only the Regulations (and not these Questions and Answers) provide the authoritative statement of your rights and the procedures to be followed.

*Q: What is a Prepenalty Notice?*

A: A Prepenalty Notice is a letter from OFAC informing you that OFAC intends to penalize you for possible violations of the OFAC regulations. This notice is the first stage in a penalty procedure, and you have several options for responding.

*Q: Is the Prepenalty Notice charging you with a crime?*

A: No. The notice is informing you that OFAC believes you may have violated its regulations and seeks a monetary penalty and/or forfeiture.

*Q: Do you have a right to respond to the Prepenalty Notice?*

A: Yes. You have the right to make a formal written response. You may also begin settlement negotiations by phone, but such negotiations do not take the place of a written response unless a settlement is reached.

*Q: What is your deadline for responding to a Prepenalty Notice?*

A: Your response to your Prepenalty Notice must be postmarked or date-stamped by the U.S. Postal Service (or foreign postal service, if mailed abroad) or courier service provider (if transmitted to OFAC by courier) on or before the 30th day after the following: after the postmark date on the envelope in which you received your Prepenalty Notice—if the Prepenalty Notice was mailed to you; after the date on OFAC's stamped postal receipt—if you refused delivery or otherwise avoided receipt of the Prepenalty Notice; after the date of delivery to you—if your Prepenalty Notice was personally delivered to you. If a due date falls on a federal holiday or weekend, that deadline is extended until the following business day.

*Q: What forms do you need to complete your written response?*

A: There are no forms and you may simply send a handwritten or typed letter.

*Q: What should you include in your written response?*

A: Your written response must include your full name, address, telephone number, and facsimile number, if available. You must either admit or deny each specific violation alleged in the "Violations" section of your Prepenalty Notice. You must also state if you have no knowledge of a particular violation. Include any information you wish to supply in your defense, whether or not you have previously submitted that information to OFAC, the U.S. Customs Service, or any other agency. Any evidence which you may have that substantiates a defense or other factor which you wish OFAC to consider should be submitted with your response. Also, if you wish to request a hearing and pre-hearing discovery (such as a review of the non-privileged documents OFAC relied upon in issuing the Prepenalty Notice), you must include these requests in your timely-filed written response; if you do not, you will lose the opportunity to make these requests.

*Q: Where do you send your written response?*

A: Send your written response to: Office of Foreign Assets Control, Civil Penalties Program, U.S. Department of the Treasury, 1500 Pennsylvania Avenue, N.W., Washington, D.C. 20220. We suggest that you use certified or registered mail, return receipt requested (or similar services provided by courier services), which will provide you with evidence of the date of mailing and the date of receipt by OFAC.

*Q: Can you fax a copy of your written response?*

A: You can fax a copy of your written response to OFAC at (202)622-1657 , but you must also send your response to OFAC at the above address by mail or courier, postmarked or date-stamped on or before the relevant 30-day deadline.

*Q: What happens if you do not file a written response to the Prepenalty Notice?*

A: If you do not file a written response, OFAC will conclude that you have decided not to respond to your Prepenalty Notice and generally will issue you a final Penalty Notice imposing the penalty proposed in your Prepenalty Notice. You will also waive your right to a hearing and pre-hearing discovery.

*Q: Do you have a right to an agency hearing? Where would this hearing be held?*

A: You have a right to an agency hearing to present your case before a final penalty is imposed. The hearing will be held in Washington, D.C.

*Q: How do you request a hearing?*

A: Your request for a hearing must be included in your written response, and it must be filed at OFAC within the relevant 30-day deadline. Either you or your lawyer must sign the hearing request.

*Q: Can you review the documents OFAC used in determining to issue the Prepenalty Notice?*

A: If you request a hearing, you may also request pre-hearing discovery (including a review of the non-privileged documents OFAC has relied upon). However, you must include your request in your written response, which must be filed at OFAC within the relevant 30-day deadline.

- continued on Page 3 -

- continued from Page 2 -

**Q:** What happens if you do not request a hearing and pre-hearing discovery or if you cancel a scheduled hearing?

**A:** If you do not request a hearing and pre-hearing discovery in your written response or if you cancel a scheduled hearing, you will have waived your right to a hearing and pre-hearing discovery. OFAC will then base its decision of whether to impose a penalty and/or forfeiture on your written response (if submitted) and any relevant facts that are available.

**Q:** If you request a hearing and pre-hearing discovery, what happens next?

**A:** If you request a hearing and pre-hearing discovery, OFAC will send you a letter confirming receipt of your requests and either informing you of the date of your hearing or notifying you that OFAC has not yet set a hearing date and will inform you when the date is set. The hearing procedures (including pre-hearing discovery deadlines) are set out for you in sections 515.705-.717 of the Cuban Assets Control Regulations.

**Q:** How soon after you request a hearing and pre-hearing discovery does the pre-hearing discovery have to begin?

**A:** OFAC has suspended all discovery deadlines that follow receipt of any hearing and pre-hearing discovery requests until further notice. If you request a hearing and pre-hearing discovery at any time, you may begin pre-hearing discovery at any time, but OFAC will not be required to respond to your discovery requests (nor will you be required to respond to OFAC's discovery requests) until OFAC has informed you that the discovery deadlines have been reinstated.

**Q:** Can I change my mind and withdraw a hearing request?

**A:** Yes, you may withdraw a hearing request that you have made. OFAC will then proceed to consider the case administratively without a hearing unless you decide to enter into settlement negotiations.

**Q:** Is settlement an option? If so, how is this arranged?

**A:** Yes, settlement is an option. You may offer a settlement in your written response, or you may contact the OFAC Civil Penalties Program to discuss a settlement at any time prior to the issuance of a final Penalty Notice. You may discuss settlement even after you have requested an agency hearing. Please note that settlement discussions do not take the place of a written response, not a penalty. If the actions or transactions do not postpone the 30-day due date for submission of your written response and request for a hearing and pre-hearing discovery, unless a settlement is actually completed prior to the 30-day due date.

**Q:** What is the effect of a settlement with OFAC?

**A:** A settlement amount agreed upon and paid ends any further enforcement action by OFAC with respect to the OFAC violations which were alleged in the Prepenalty Notice. No Penalty Notice is subsequently issued, nor is there a formal finding by OFAC that the alleged violations were, in fact, committed. The settlement amount paid is considered a voluntary payment, not a penalty. If the actions or transactions which produced the violations alleged by OFAC also involved alleged violations of laws enforced by other Federal agencies (such as the U.S. Customs Service), the settlement entered into with OFAC does not preclude further civil penalty or other action by such other agencies for the alleged violations of the laws they enforce unless the settlement agreement so states and is agreed to by the other agencies involved (sometimes referred to as a "global settlement").

**Q:** Can you arrange an installment plan to pay a settlement?

**A:** Yes, once you and OFAC have agreed upon a settlement amount, you can arrange an installment payment plan with the Treasury Department's Financial Management Division. OFAC will assist you in contacting the appropriate person there.

**Q:** Do you need to submit a written response if a settlement is reached?

**A:** No, you do not need to submit a written response if a settlement is reached before the 30-day written response period has ended.

**Q:** What happens if you do not reach a settlement with OFAC within 30 days?

**A:** If you do not reach a settlement with OFAC within 30 days, OFAC will proceed with a final determination and will base its decision of whether to impose a penalty and/or forfeiture only on your written response (if submitted) and any other relevant facts. At that point, OFAC generally is not required to consider issues discussed and defenses presented during settlement negotiations unless they are repeated in a formal written response.

**Q:** What happens if you do not pay the penalty assessed by OFAC?

**A:** All unpaid penalties are referred either for Treasury Department administrative collection measures or to the United States Department of Justice for collection litigation in federal court. Administrative collection usually includes interest, charges, and fees. Administrative collection measures may include referring the unpaid penalty to a private collection agency or offsetting the amount due against other payments made by the U.S. Government to you, such as income tax refunds.

**Q:** Can you arrange an installment plan to pay an assessed penalty?

**A:** Yes, arrangements can be made upon request to the Treasury Department's Financial Management Division.

**Q:** Whom can you contact at OFAC to further discuss this matter?

**A:** You can contact Mrs. B.S. Scott, Chief, Civil Penalties Program, at (202)622-6140.

# # #

The Treasury Department's Office of Foreign Assets Control administers sanctions programs involving Libya, Iran, Sudan, the Federal Republic of Yugoslavia (Serbia and Montenegro) and Bosnian Serb-controlled areas of the Republic of Bosnia and Herzegovina, the Republic of Serbia, Cuba, the National Union for the Total Independence of Angola (UNITA), North Korea, Iran, Syria, Burma (Myanmar), Foreign Terrorist Organizations, designated terrorists and narcotics traffickers, and the proliferation of weapons of mass destruction.  For additional information about the sanctions, please contact the:

**OFFICE OF FOREIGN ASSETS CONTROL**
U.S. Department of the Treasury
1500 Pennsylvania Avenue, N.W.
Washington, D.C. 20220
202/622-2520

(03-04-99)

# UNITED STATES DEPARTMENT OF THE TREASURY
# OFFICE OF FOREIGN ASSETS CONTROL

UNITED STATES OF AMERICA,       )
     Complainant,               )
                               )      **Case No. 05T008**
           v.                )
                               )      **31 CFR Part 501**
ZACHARY JOHN SANDERS,       )      **Proceeding**
     Respondent.            )

## ADMINISTRATIVE LAW JUDGE RECOMMENDED DECISION

This case is before me on an amended complaint and cross-motions for summary disposition. The original complaint was filed on March 2, 2005. Respondent filed an Answer on April 20, 2005, in which Respondent asserted multiple affirmative defenses. Most notable among those defenses were assertions the proceeding violated Respondent's rights under various provisions of the Constitution, failure to adhere to procedural requirements, and unreasonable delay in instituting the proceeding. The Complainant was represented by Mr. Mike Maher, an attorney with the Department of the Treasury. The Respondent was represented by Mr. Shayana Kadidal, an attorney with the Center for Constitutional Rights. After conferences with Counsel, it was agreed the parties would file opposing motions for summary disposition, file any necessary responses, and complete some necessary discovery prior to convening a hearing to consider evidence and arguments.

A hearing was held in Washington, D.C. on June 27, 2005, at which the complainant presented testimony and both sides presented written evidence. Respondent was present at the hearing by telephone connection, was offered an opportunity to testify, but declined to testify. An opportunity for oral argument was provided to counsel to supplement the extensive memoranda submitted in support of the various motions. This material has been carefully considered. I make the following findings of fact and conclusions of law in support of my recommended decision.

### FINDINGS OF FACT

The Respondent, ZACHARY JOHN SANDERS, is a citizen of the United States and subject to the jurisdiction of this forum. The record indicates Mr. Sanders is a law school graduate.

In early 2000, the Enforcement Division of the Office of Foreign Assets Control (OFAC) received information from the U.S. Customs Service of a potential violation of the Cuban Embargo by the respondent. The potential violation involved an entry into the United States on July 6, 1998. It was quickly determined from OFAC records that Mr.

Sanders had not received a specific license to travel to Cuba. Examination of the Customs Declaration provided by Mr. Sanders at the time of his reentry into the United States from the Bahamas caused a reasonable suspicion he had engaged in a trip to Cuba. Even though Cuba was not listed on the Declaration as a country visited, the Declaration listed Mexico as a country visited. Mr. Sanders' passport showed a Bahamian visa for purposes of transit only. According to the testimony of the experienced OFAC enforcement officer, visits to Cuba are often accomplished by a flight from Mexico to Cuba and then to the Bahamas to change planes for the United States.

Records of the Customs Service indicate the Customs Inspector who interviewed Mr. Sanders on July 6, 1998, formed a reasonable belief Mr. Sanders had traveled to Cuba. Inspection of Mr. Sanders' luggage disclosed a box of Cuban cigars Mr. Sanders agreed to forfeit. The Cuban cigars were not listed by Mr. Sanders on his Customs Declaration.

The evidence and argument presented by the Respondent do not take any substantial issue with the proposition that the Respondent traveled to Cuba in 1998 without the benefit of an OFAC license of any kind and while in Cuba the Respondent spent some money in the form of U.S. currency.

Based on the review of the initial report of potentially improper entry through U.S. Customs by respondent, on March 1, 2000, the Office of Foreign Assets Control (OFAC) sent the respondent a Request for Information (RFI) concerning his travel. The RFI was directed to an address in Oregon which was the last address for the Respondent available to OFAC. The RFI is a several page document posing questions concerning the route and purpose of the trip. The RFI includes a statement demanding a response within a defined period of time and promises unpleasant consequences for failure to respond within that time. It is important to note the RFI describes both the limitations on travel to Cuba and some potential arguments to legally justify the travel.

Even though he did not answer the questions posed, because Mr. Sanders responded to the RFI, both personally and through counsel, it is clear he received and understood the document. I note in particular the letter by Mr. Sanders dated March 10, 2002, which responded directly to the Prepenalty Notice of February 13, 2002. It has not been argued by the Respondent that the RFI was defective in any way, either as to form, process of issuance or service on the Respondent. Instead, Respondent urges that the potential for criminal prosecution, in addition to or instead of an action for civil penalties, makes the constitution privilege against self incrimination applicable to the RFI even if he never uttered "fifth amendment" in response to the document.

The Complainant takes the position that while the privilege against self incrimination applies to the RFI (See the Declaration of Daniel Yorks), OFAC can on the one hand not acknowledge in the document the privilege applies and on the other hand threaten substantial civil penalties for failure to respond with specific and accurate information.

Complainant's counsel argues that credibility of the Cuban embargo requires a general public belief that responses to an RFI are required under the law to avoid significant civil

2

penalties. An effective response to an RFI is alleged to be either a factual report or an overt claim of constitutional privilege.

This case is unique because Mr. Sanders is not alleged to have violated legal restrictions on travel to Cuba, but rather only to have failed to respond in writing to the RFI. If he had faced the substantive violations of the embargo, I have little doubt as to the outcome of that proceeding in light of the documents in the record. If a negative inference from the invocation of the privilege against self incrimination were permitted, the outcome would be even in less doubt. But this case is not about the substantive embargo violation but rather about the sensitive procedural issue of whether Mr. Sanders can be required to overtly claim his privilege against self incrimination in response to an RFI.

While it has not been argued to any significant extent by the parties, there appears to be an issue as to jurisdiction based on the amount of time which elapsed between the alleged substantive violation of the Cuban embargo and the commencement of this proceeding. The most obvious time limitation is the five year limitation on commencement of the substantive proceeding contained in 28 U.S.C. 2462.[1] There is an issue as to whether the associated claim for failure to respond to an RFI concerning the substantive violation has a separately calculated period of limitation. Stated conversely, can OFAC extent the time limitation on jurisdiction by successive RFI to the alleged violator.

There is also an issue of the appropriate amount of any civil penalty owed by the Respondent in the event a violation is found to have occurred. The amount is determined by evaluating the financial circumstances of the Respondent as well as the public interest in fair and effective enforcement of the law.

## CONCLUSIONS OF LAW

The Respondent is a person subject to the jurisdiction of the United States as a citizen and resident.

The Requirement to Furnish Information (RFI) issued by OFAC on March 1, 2000, was issued based on reasonable cause to believe a violation of Cuban travel restrictions had occurred. The RFI was issued in accordance with applicable procedural requirements in 31 C.F.R. § 501.602. The Cuban travel regulations include a requirement that every person engaged in a transaction subject to the regulations, whether or not covered by a

---

[1] The language of 28 U.S.C. 2462 leaves little doubt the five year limitation applies to the commencement of a proceeding before an Administrative Law Judge rather than a subsequent proceeding in Federal Court to collect any penalty assessed. The statute reads as follows:

Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

See, *Johnson v. SEC*, 87 F.3d 484 (C.A.D.C. 1996)

3

permit issued by OFAC, keep a written report of the transaction for a period of 5 years after completion of the transaction. The RFI is a means of obtaining the content of that report upon demand by the Director of OFAC. The RFI is the functional equivalent of an administrative subpoena for a document required to be maintained by travelers regardless of the legality of the travel. The regulation authorizing an RFI was issued pursuant to authority in the Trading With the Enemy Act, 50 U.S.C. App. § 1 *et seq.* A civil penalty is authorized for actions violating regulations issued pursuant to the Trading With the Enemy Act.

The Fifth Amendment privilege against self incrimination is applicable to an administrative subpoena like the RFI only because the statutory framework for this subject includes both civil and criminal enforcement authority. The same action by an individual can be the subject of both a civil and criminal legal proceeding. The agency with enforcement responsibility has a choice of which type of proceeding will be undertaken first. OFAC apparently has made the decision to first pursue the civil proceeding.

An RFI issued pursuant to the Trading with the Enemy Act under the present implementing regulations presents the recipient of the RFI with questions that present a substantial threat of aiding in a potential criminal prosecution. The option, held by the government, of not pursuing a criminal prosecution is not relevant to the existence of a privilege against self incrimination.

There is substantial authority for the proposition that while a party in a civil proceeding may refuse to testify under the privilege of the Fifth Amendment, including testimony in the discovery stage of the proceeding, an adverse inference may be drawn against that party because of the invocation of the privilege. *Baxter v. Palmigiano,* 425 U.S. 308 (1976); *Centennial Life Ins. Co. v. Nappi,* 956 F. Supp 222 (N.D. N.Y. 1997). Thus, even the obligation to overtly invoke the privilege has practical and legal consequences.

For any prosecution for an alleged violation of the Trading with the Enemy Act based on the July, 1998, travel to Cuba by the Respondent, the time period provided by the applicable statute of limitations had not elapsed at the time of the initial issuance of an RFI. That time period ended on July 7, 2003. For purposes of jurisdiction in this proceeding, the claim of violation of 31 C.F.R. §501.602 arose on April 24, 2000, the date originally fixed for Mr. Sanders to provide his trip report. At that initial date the report would have served a useful purpose in resolving whether the circumstances of Mr. Sanders' trip would come within legally permitted reasons for travel to Cuba and hence guide the enforcement purpose of the embargo regulations. On July 7, 2003, the trip report sought by the RFI ceased to have a purpose in guiding the enforcement purpose of the embargo regulations since no civil penalty action could be maintained concerning the July 6, 1998, visit to Cuba.

Enforcement of 31 C.F.R. §501.602 subsequent to July 7, 2003, continued to have some reasonable and defensible public purpose. The public interest to be protected involves the credibility of the information gathering practices of OFAC as those are necessary for

4

the proper enforcement of the Cuban or other embargo. The change in purpose for enforcement is relevant, at the very least, to the issue of appropriate penalty to be assessed for any violation found.

The civil penalty proposed by Director of the Office of Foreign Assets Control is $10,000.00. This would be an appropriate penalty for a violation of the restriction on travel to Cuba. The civil penalty serves as both a deterent to future violations and compensation to the public for the damage to foreign policy objectives from the violation of the travel restriction. But this case is not about a violation of the restriction on travel to Cuba. This case is about a failure to respond to a request for information about a trip to Cuba. I think it is important to note the claim for failure to supply information was filed within weeks of being barred by the statute of limitations. The civil penalty was asserted almost eight years after the completion of the trip to Cuba which touched off this controversy.

Neither party offered any competent evidence on the issue of the appropriate amount of any penalty to be imposed. The Director relied upon a standard penalty amount established by the Treasury Department. The Respondent stood mute and relied on legal defenses asserted by counsel.

The record is clear Mr. Sanders received a lawfully issued Request for Information concerning his trip to Cuba. He is an intelligent and informed citizen of the United States. He failed to respond to the Request for Information, either by invoking his privilege against self incrimination or by providing the requested information. He violated the lawful regulations of the Office of Foreign Assets Control. Under the circumstances of this case, I have concluded an appropriate penalty for the violation is the total sum of $1000.00. This amount represents a substantial deterent to future violations by Mr. Sanders or others who may learn of his punishment. It also represents appropriate compensation to the public for the loss of useful information which Mr. Sanders could have provided concerning his visit to Cuba and the monetary transactions in which he engaged.

PROPOSED ORDER

Based on the record assembled and considered with great care in this case, the Respondent is direct to pay the sum of $1000.00 to the United States of America as a civil penalty for the violation of 31 C.F.R.§501.602.

> Irwin Schroeder
> Administrative Law Judge
> Office of Medicare Hearings and Appeals
> Washington, DC
> Dated:

5

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th   day of September, 2008, I have served the foregoing ADMINISTRATIVE LAW JUDGE RECOMMENDED DECISION on the following persons at the addresses shown, by first class mail, unless otherwise noted:

Office of the General Counsel
United States Department of the Treasury
1500 Pennsylvania Ave., NW
Washington, DC  20220
(Counsel for Complainant)

Shayana Kadidal, Esq.
Center for Constitutional Rights
666 Broadway 7th Floor
New York, NY  10012
(Counsel for Respondents)

Irwin Schroeder
Administrative Law Judge
Washington, DC



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

M. William Schisa
Attorney for the Government
Chief Counsel's Office, Foreign Assets Control
Office of the General Counsel
U.S. Department of the Treasury
1500 Pennsylvania Avenue, N.W.
Washington, DC 20220
Phone: (202) 622-2410
E-mail: will.schisa@do.treas.gov

Shayana Kadidal, Esq.
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
Phone: (212) 614-6438
E-mail: kadidal@ccr-ny.org

Via Facsimile, E-mail and Regular Mail                     October 24, 2008

Re: United States v. Zachary John Sanders, Case No. 05T008

Counselors:

Please find enclosed a Determination and Order of this case.

Sincerely yours,

*Dan Iannicola Jr.*
Dan Iannicola, Jr.
Secretary's Designee
Deputy Assistant Secretary
Department of the Treasury
1500 Pennsylvania Ave., N.W.
Washington, DC 20220

UNITED STATES DEPARTMENT OF THE TREASURY
OFFICE OF THE SECRETARY'S DESIGNEE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>    Complainant, | )<br>)<br>) | **31 CFR PART 501 PROCEEDING** |
| | )<br>) | **Case No. 05T008** |
| vs. | )<br>) | <u>**DETERMINATION AND ORDER**</u> |
| ZACHARY JOHN SANDERS,<br>    Respondent. | )<br>) | |

I have determined, pursuant to the authority granted by Section 501.741 (a)(1)(ii)(B)(3) of the Cuban Assets Control Regulations ("CACR"), that there is in the Decision and Order issued by Administrative Law Judge Schroeder on September 4, 2008, an exercise of discretion or decision of law or policy which I should review.

It is therefore **ORDERED** that, pursuant to Section 501.743 of the CACR:

1. Complainant shall file an opening brief of no more than ten (10) pages (exclusive of pages containing the table of contents, table of authorities, and any addendum) not later than ten (10) days after the date of this Order;

2. Respondent shall file an opposition brief of no more than ten (10) pages (exclusive of pages containing the table of contents, table of authorities, and any addendum) not later than ten (10) days after the date opening briefs are due;

3. Complainant shall file a reply brief of no more than five (5) pages (exclusive of pages containing the table of contents, table of authorities, and any addendum) not later than seven (7) days after the date opposition briefs are due.

No other briefs in addition to those specified above may be filed without my permission.

- 2 -

Parties should not offer argument on whether a violation of 31 C.F.R. § 501.602 occurred. Rather, parties will limit their briefs to the question of whether Judge Schroeder erred in the appropriateness of the amount of the penalty assessed.

So ordered.

Dan Iannicola, Jr.
Secretary's Designee

Date: October 24, 2008

UNITED STATES DEPARTMENT OF THE TREASURY
OFFICE OF THE SECRETARY'S DESIGNEE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **31 CFR PART 501 PROCEEDING** |
| | ) | |
| Complainant, | ) | Case No. 05T008 |
| | ) | |
| vs. | ) | **DETERMINATION AND ORDER** |
| | ) | |
| ZACHARY JOHN SANDERS, | ) | |
| Respondent. | ) | |

The Secretary's Designee hereby determines, pursuant to the authority granted by 31 C.F.R. 501.742(a), that the Decision and Order issued by Administrative Law Judge Schroeder on September 4, 2008, should be modified to increase the penalty for violation of 31 C.F.R. 501.602 to $9000.00.


SUMMARY OF FINDINGS


The Administrative Law Judge erred as a matter of both law and policy by reducing the penalty against the Respondent for his violation of 31 C.F.R. section 501.602. The public interest is not served by reducing the penalty for failure to furnish information sought by the Office of Foreign Assets Control's (OFAC) Request For Information (RFI).


FACTS

The Enforcement Division of OFAC received information from the U.S. Customs Service in early 2000 that the Respondent, a U.S. citizen, potentially violated the Cuban

Embargo. The potential violation involved the Respondent's entry into the United States on July 6, 1998, having traveled to Cuba without a specific license. The evidence and argument presented by the Respondent do not take any substantial issue with the proposition that Respondent traveled to Cuba in 1998 without the benefit of an OFAC license of any kind, and while in Cuba, spent U.S. currency.

On March 1, 2000, OFAC sent the Respondent a Request for Information concerning his travel. The Administrative Law Judge found that the Respondent received and understood the RFI, and the Secretary's Designee concurs.

CONCLUSIONS OF LAW

In the Administrative Law Judge Recommendation, the ALJ states that "this case is unique because Mr. Sanders is not alleged to have violated legal restrictions on travel to Cuba, but rather only to have failed to respond in writing to the RFI." Nonetheless, the ALJ goes on to state that Respondent "received a lawfully issued Request for Information concerning his trip to Cuba.... He failed to respond to this Request for Information, either by invoking his privilege against self incrimination or by providing the requested information." (See Administrative Law Judge Recommended Decision at 5.)

The Secretary's Designee does note that OFAC has not been timely in pursuing resolution with Respondent. First, OFAC did not send him a RFI until two years after his travel to Cuba. Second, OFAC did not commence its enforcement proceeding against Respondent on his travel to Cuba within the statute of limitations. Thus, for nearly seven

2

years OFAC failed to bring action against Respondent on the underlying violation, and yet pursued this case on the failure to respond to a Request for Information. While failure to respond to an RFI is of serious legal and policy concern, and OFAC is within its authority to pursue action on these grounds, the Secretary's Designee is concerned that the underlying violation was not acted upon.

Although certain mitigating and aggravating factors can be considered, the Penalty Guidelines state that "[e]ach failure to respond to a requirement to furnish information, issued pursuant to 31 C.F.R. 501.602, generally will result in a proposed penalty in the amount of $10,000, irrespective of whether any other violation is alleged." See Economic Sanctions Enforcement Guidelines §III(A)(6)(a), 68 Fed. Reg. 4422, 4427 (January 29, 2003) ("Penalty Guidelines"). The Administrative Law Judge's Recommended Decision deemed a reduction in penalty to $1,000 appropriate, since this case was about a failure to respond to an OFAC request for information about travel to Cuba rather than about restricted travel to Cuba, in which the case was not filed until weeks prior to the expiration of the statute of limitations, nearly seven years after Respondent's trip.

The Respondent has asserted that the appropriate penalty in this case should be zero. OFAC originally called for a penalty of $10,000, citing the Penalty Guidelines, but in its Motion to Amend the Order Instituting Proceedings, stated the penalty should be $9,000. (See OFAC Br. at 5)

OFAC's thousand dollar reduction was based on the mitigating factors of Respondent's first offense and his cooperation in responding to the RFI, as well as the aggravating factor of his willfulness in knowing about and failing to respond to the RFI.

If the ALJ's Recommended Decision were affirmed without modification, there would effectively be only a modest penalty for refusing to fill out a lawful form. Indeed future sanction violators would be incentivized to ignore the form entirely as a way to make it more costly and less likely for OFAC to prove the underlying violation which would certainly bring a much higher penalty. The violator would reason that the penalty for disregarding the form is so low relative to the penalty for violating the sanction that ignoring the form is a good gamble.

The Secretary's Designee notes the primary mission of OFAC is to administer and enforce economic sanctions against targeted foreign countries and regimes in furtherance of U.S. national security, foreign policy, and economic objectives. To carry out this mission, it is imperative that OFAC's information gathering practices are credible and obligatory to properly enforce a United States embargo on a foreign country. Therefore the Secretary's Designee implements OFAC's proposed penalty of $9,000 as appropriate to prevent a perverse incentive to avoid filling out a lawful form by making the penalty low relative to the penalty of the underlying violation.[1]

---

[1] Under 31 C.F.R. § 501.742(a) "the Secretary's designee may affirm reverse, modify, set aside or remand for further proceedings, in whole or in part, a decision or ruling by an Administrative Law Judge and may make any findings or conclusions that in his or her judgment are proper and on the basis of the record and such additional evidence as the Secretary's Designee may receive his or her discretion."

4

So ordered.

Dan Iannicola, Jr.
Secretary's Designee

Dated:  January 16, 2009

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of July, 2009, a copy of this Complaint for Injunctive and Declaratory Relief was served by first-class certified mail upon:

Adam Szubin
Director
Office of Foreign Assets Control
US Department of the Treasury
Treasury Annex
1500 Pennsylvania Ave, NW
Washington DC 20220

Timothy Geithner
Secretary
US Department of the Treasury
1500 Pennsylvania Ave, NW
Washington DC 20220

Eric H. Holder
Attorney General
US Department of Justice
950 Pennsylvania Ave, NW
Washington DC 20530-0001

Anjana Samant, Esq.
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th floor
New York NY 10012
phone: (212) 614-6445

Rider A

Attorneys for Plaintiff

CENTER FOR CONSTITUTIONAL RIGHTS
Anjana Samant  AS5163
Darius Charney  DC1619
666 Broadway, 7th Floor
New York, NY  10012-2317
(212) 614-6438

SOKOLSKI & ZEKARIA, P.C.
Daphna Zekaria
305 Broadway, Ste. 402
New York, NY 10007
(212) 571-4080